IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHELY FOSTER,            *
o/b/o                    *
*K.D.F.*                 *
                         *
     Plaintiff,          *
                         *
vs.                      *      CIVIL ACTION 08-00290-B
                         *
MICHAEL J. ASTRUE,       *
Commissioner of          *
Social Security,         *
                         *
     Defendant.          *

<u>ORDER</u>

Plaintiff Shely Foster ("Plaintiff") brings this action on behalf of her minor child, K.D.F. (Hereafter "KF"), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for child supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 <u>et</u> <u>seq</u> ("SSI").   On May 1, 2009, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 20).   Thus, this case was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73.  (Doc. 21).   Oral argument was held on May 8, 2009.  Upon consideration of the administrative record, and the argument and memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**

Plaintiff, on June 23, 2004, protectively filed an application for supplemental security income benefits on behalf of her daughter KF, alleging that she has been disabled since February 1, 1996, due to juvenile rheumatoid arthritis ("JRA")[1].  (Tr. 494, 495-497, 498, 500-501).  Plaintiff's application was denied initially, and she filed a timely Request for Hearing.  (Tr. 475, 490).  On March 24, 2006, Administrative Law Judge Ricardo M. Ryan ("ALJ Ryan") held an administrative hearing which was attended by Plaintiff, her daughter KF and her representative.  (Tr. 750-766).  On August 23, 2006, the ALJ issued an unfavorable decision finding that KF is not disabled.  (Tr. 15-26).  Plaintiff filed a request for review, and on April 18, 2008, the Appeals Council ("AC") denied the request; thus, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981.  (Tr. 10-12).  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.  **Issues on Appeal**

---

[1]Prior to the instant application, Plaintiff had previously filed two other applications on behalf of her daughter.  The prior applications were denied. (Tr. 38-39, 41-42, 50-51, 59-63, 459-469, 711-749).

A.  Whether the ALJ erred in determining that KF's JRA did not meet, equal or functionally equal a listing.

B.  Whether the ALJ erred in failing to articulate a credibility finding.

### III. Factual Background

KF was born on September 7, 1989, and was 16 years old at the time of the hearing. (Tr. 498,757). She has a 9th grade education. (Tr. 505, 529, 759). At the hearing, KF testified that she had missed 38 days from school since September of 2005, due to pain in her back, knees, ankles, feet, hands, shoulder and face caused by arthritis. (Tr. 757-758). She stated that she experiences swelling in her face twice a month. (Tr. 758). KF also testified that pain in her shoulder, hands, lower back and feet make it difficult for her to function. According to KF, she wears a brace on her knee because her leg "locked up" while she was getting out of the car. (Tr. 758-761). KF also testified that she cannot stand or walk a long time, and as a result, she cannot participate in activities and is getting out of the band. (Tr. 763).

Plaintiff testified that KF limps, is in constant pain, and has swelling in her face. She confirmed that KF is having to drop out of band due to pain. (Tr. 756-757).

### IV. Analysis

#### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1)

3

whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. 1999).

  B.   **Childhood Disability Law**

   The Personal Responsibility and Work Opportunity Act of 1996, which amended the statutory standard for children seeking supplemental security income benefits based on disability, became

---

   [2]This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

effective on August 22, 1996.  <u>See</u> Pub. L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (codified at 42 U.S.C. § 1382c).  The definition of "disabled" for children is:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

<u>See</u> 42 U.S.C. § 1382c(a)(3)(C)(I), 20 C.F.R. § 416.906.[3]  The regulations provide a three-step sequential evaluation process for determining childhood disability claims.  20 C.F.R. § 416.924(a).

At step one, a child's age/work activity, if any, are identified to determine if he has engaged in substantial gainful activity.  At step two, the child's physical/mental impairments are examined to see if he has an impairment or combination of impairments that are severe.  Under the regulations, a severe impairment is one that is more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations."  20 C.F.R. § 416.924( c).  To the extent the child is determined to have a severe impairment, at step three, he must establish that the impairment results in marked and severe functional limitations.  42 U.S.C. § 1382c(a)(3)(C)(I).  The

---

[3]On September 11, 2000, the Commissioner published Final Rules for determining disability for a child under the age of 18. <u>See</u> 65 Fed. Reg. 54,747, corrected by 65 Fed. Reg. 80,307.  These rules became effective on January 2, 2001 and apply to Plaintiff's claim.  <u>See</u> 65 Fed. Reg. at 54,751.

regulations set forth that an "impairment(s) causes marked and severe functional limitations if it meets, medically equals or functionally equals the listings."  20 C.F.R. § 416.924(d).

A child's impairment(s) meets the Listings' limitations if he actually suffers from limitations specified in the Listings for his severe impairment.  20 C.F.R. § 416.926(d).  A child's impairment medically equals the Listings if his limitations are at least of equal severity and duration to the listed impairment(s).  Id. Where a child's impairment or combination of impairments does not meet or medically equal any Listing, then the Commissioner must determine whether the impairment or combination of impairments results in limitations which functionally equal the criteria for a Listing.[4]  Id.

In case sub judice, the ALJ determined that while KF has the severe impairment of JRA, it does not meet, medically equal or functionally equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4.  (Tr. 17-26).  The ALJ concluded that while KF has a "less than marked" limitation in her ability to move about and manipulate objects and in health and well-being, she does not have an extreme limitation

---

[4]In making this assessment, the reports of the State Agency medical consultants, reports of other treating, examining and non-examining medical sources, and the claimant's symptoms, including pain and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, are all taken into consideration. 20 C.F.R. §§ 416.927, 416.929; and SSR 96-5, 96-6p and 96-7p.

in any area of functioning or a marked limitation in two areas of functioning.  (Id.)  Thus, the ALJ found that KF is not disabled under the Act.  (Id.)

The relevant[5] evidence of record reveals that KF was diagnosed with JRA in November of 2002.  (Tr. 239).   KF was seen by Dr. Ralerson on  January 9, 2004, four months prior to the period of consideration, with complaints of a sore throat, headache, stomach ache, left side pain and dizziness with standing.   On physical exam, it was noted that KF had white-coated tongue and hoarseness, with a moderate swelling of her lymph gland on the left, slight tenderness on the left lateral area of the abdomen, with no swelling.   Her strep test was positive.   (Tr. 346, 605).

KF returned to Dr. Ralerson's office on January 19, 2004, and reported that she fell two days before when her knee "gave way." KF also indicated that she tripped on a shoe.   The treatment notes reflect that a large amount of red dye was removed from KF's knee, which was not swollen.   An x-ray showed no fracture, effusion, or other significant abnormality.   Her assessment was of a "faked

_____

[5]While the undersigned has reviewed the entire record, for instance including those records submitted with the February 14, 2003 application, only those records which pertain to Plaintiff's claims on appeal of the August 23, 2006 decision are set forth here. It is noted that many of the documents submitted in support of the application dated June 23, 2004 are actually duplicates of those submitted in support of the application dated February 14, 2003.   These previously submitted documents are set forth here only to the extent that they are relevant to the period of consideration for the current application.

injury," and Munchausen syndrome[6] was noted.  (Tr. 344-345, 401, 604, 615).  Office noted dated January 28, 2004 reflect that KF's strep test was again positive.  (Tr. 343, 603).

KF presented to D.W. McMillan Memorial Hospital emergency room on January 31, 2004, complaining of headache and itching, but no rash.  Her uric acid test was negative.  (Tr. 580).  An ultrasound of KF's right elbow/antecubital fossa on March 19, 2004 showed no evidence of a simple or complex fluid collection suggesting hematoma or abscess.  Normal soft tissues were noted.  (Tr. 614).

Dr. Ralerson's office notes dated February 12, 2004 reflect that KF presented with whitish discharge from both breasts and soreness in the lower half of her breasts.  She was diagnosed with possible galactorrhea.  (Tr. 342, 602).  Dr. Ralerson's office notes February 20, 2004 reflect that KF's physical exam was normal except for dry skin and mildly tender upper lumbar area to palpation, with full range of motion with mild pain on extension.  It was noted that KF could toe walk and had no swelling or erythema.  (Tr. 341-341A, 600, 601).

KF presented to Dr. Ralerson on March 9, 2004 with a swollen face and blurred vision.  She complained of frontal headache, and left knee pain.  Her physical exam was normal, except for reported

_____

[6]Munchausen syndrome is a psychological disorder in which one feigns symptoms in order to undergo medical tests.  See, www.nlm.nih.gov/medlineplus/mplusdictionary (Last visited April 29, 2009).

tenderness to palpation of the left maxillary area. The notes reflect that KF had a full range of motion of all joints, and no tenderness, swelling or warmth at any joint. Her rheumatoid factor, complete blood count and sed rate were all normal. (Tr. 340, 599).

KF was next treated by Dr. Ralerson on March 18, 2004. She complained about right arm problems. Dr. Ralerson noted a 4 x 5 ½ purple lesion below her right elbow. Dr. Ralerson ordered an ultrasound of KF's right elbow, which showed no evidence of simple or complex fluid collection suggesting hematoma or abscess. (Tr. 239, 395, 598). Dr. Ralerson's office notes dated March 19, 2004 reflect that Dr. Ralerson discussed KF's ultrasound with Dr. Samuels (in radiology), and determined that the lesions appeared to be superficial, most likely a self-induced bruising. (Tr. 339A, 598A).

Plaintiff was treated by Marian B. Stewart, M.D., on April 19, 2004. KF presented with bilateral hip pain, mostly when she is standing, that is a "5" of a scale of "1" to "10." On physical exam, KF's right hip had full range of motion without pain or tenderness, her right mid thigh had pain in the musculoskeletal area, and her thighs appeared swollen bilaterally. Her right knee was without any painful range of motion, her left hip hurt with abduction and adduction, and she had no left thigh or left knee pain. She had no shooting pain down her back with leg lifts. (Tr.

668).

In a note dated April 21, 2004, Dr. Stewart opined that KF has JRA, which is a chronic condition, and that she qualifies for disability.  (Tr. 392).

KF was seen by Dr. Stewart on April 23, 2004.  KF reported that her hips no longer hurt and that she no longer had lower eyelid swelling.  (Tr. 668).  Dr. Stewart's office notes dated May 12, 2004 reflect that KF presented with vomiting, and reported that her left knee was "locking up".  On physical exam, KF's left knee was normal with full range of motion.  No ecchymosis or hematomas was observed.  Her ankle was without swelling.  (Tr. 667).

KF returned to Dr. Stewart on May 17, 2004.  She complained that she hurt her right foot the day before.  X-rays of her right foot were normal.  (Tr. 667).  Dr. Stewart's office notes dated July 9, 2004 reflect that KF presented with back pain, left knee pain, and blisters on her right foot.  On physical exam, her left knee had no swelling, ecchymosis or hematoma, her back showed no ecchymosis or hematoma, and she had a full range of motion of her hips.  (Tr. 666).

Plaintiff was seen by Brandon Dorion, M.D., at the Rheumatology Clinic on July 22, 2004, for an evaluation of joint pain. On physical exam, KF's joints were without swelling.  Mild tenderness was observed over the left knee.  KF had mild pain with full extension and flexion.  She also had tenderness over the lower

thoracic and lumbar vertebrae and paravertebral and sacroiliac tenderness. Her muscle strength was 5/5 in the proximal and distal extremities, her deep tendon reflexes were 3/4+ in the patellar and Achilles tendons, and her gait was normal. Bilateral knee and SI joint x-rays were normal. Dr. Dorion diagnosed KF with psoriatic arthritis[7] and made adjustments to her medications. (Tr. 645-646).

A Medical Consultant completed a Childhood Disability Evaluation Form dated August 16, 2004 at the request of the Agency. The Consultant opined that KF has an impairment or combination of impairments that is severe, but does not meet, medically equal, or functionally equal the listings. The Consultant also opined that KF has less than marked limitations in health and physical well-being and in her ability to move about and manipulate objects, and has no limitation in her ability to acquire and use information, to attend and complete tasks, to interact and relate with others, and to care for herself. (Tr. 617-624).

In a letter dated August 27, 2004 and addressed to Dr. Stewart, Dr. Dorion reported KF's physical exam showed no joint swelling, moderate tenderness over the right knee and mild tenderness over the left knee, and vertebral and paravertebral tenderness in the lumbar spine. She had 5/5 muscle strength in the

---

[7]Psoriatic arthritis is a severe form of arthritis involving inflammation and psoriasis of the skin or nails and a negative RA factor test. See, www.nlm.nih.gov/medlineplus/mplusdictionary (Last visited April 29, 2009).

proximal and distal extremities, and her gait was antalgic, favoring the right leg.  Dr. Dorion diagnosed KF with psoriatic arthritis with a partial response to Enbrel.  KF was prescribed methotrexate, and her other medications were adjusted.  (Tr. 640-641).

In a letter addressed to Dr. Stewart and dated September 28, 2004, Dr. Dorion reported that KF's physical exam was basically normal, with positive Patrick's test[8], and that internal rotation of the hip did not result in hip pain.  Dr. Dorian also noted moderate tenderness at the bilateral sacroiliac joints and over the right tarsal navicular joint, mild tenderness over the left tarsal navicular joint, and normal gait at a slow pace.  He opined that KF has juvenile psoriatic arthritis that is partially controlled on medication.  He recommended that she begin methotrexate 10mg orally once per week as a combination of low dose methotrexate with Embrel, which has been shown to be efficacious for both juvenile rheumatoid arthritis and psoriatic arthritis[9].  (Tr. 639-640).

Dr. Dorion's office notes dated November 22, 2004 reflect that KF has continued stiffness throughout the day, worse in the morning, and some hip and knee pain.  She also reported

---

[8]The Patrick test is a screening test for pathology of the hip joint or sacrum.  See, www.physicaltherapy.about.com.  (Last visited April 29, 2009).

[9]Dr. Dorion noted that KF had not been able to start the methotrexate prescribed the prior visit because she was taking Advil for pain caused by her wisdom teeth.

costochondral pain and tenderness.  Her physical exam was normal except for tenderness over the second through fourth costochondral junctions bilaterally, tenderness over the left second MCP joint, and the right greater trochanter of the femur.  All other joints were without swelling or tenderness with full range of movement. She ambulated normally but slowly.  KF was prescribed physical therapy three times per week.  (Tr. 637-638).

Dr. Dorion's notes dated January 10, 2005 reflect that KF's bone density report showed osteopenia, for which she takes Os-Cal. He noted that she has had physical therapy for her back for the past month, and has no more knee pain.  KF's physical exam was normal, with no joint swelling and with full range of movement in her joints.  Dr. Dorion noted pain in her SI joints when her hips are internally rotated, and mild to moderate tenderness of the SI joints bilaterally when palpated.  He further also observed mild tenderness on palpation of the lower thoracic spine and lumbar and sacral spine, and that the pain in her SI points was worse.  (Tr. 635-636).

On January 26, 2005, KF presented to Dr. Dorion complaining that her right knee was swollen and painful, causing her to limp. Her physical exam was normal except for a mild psoriatic rash over her right knee, which was mildly swollen, moderately tender, and lacked five degrees of extension.  (Tr. 634).  On February 18, 2005, KF returned to Dr. Dorion, who noted that her knee arthritis

13

had resolved and that she had done quite well except for mid back pain which had begun the day before.  KF's physical exam was normal except for mild to moderate tenderness on palpation of the lower thoracic and lumbar spine.  Dr. Dorion noted that the problem with KF's back could be a result of the Prednisone, and so discontinued that medication.  (Tr. 632-633).

KF presented to Dr. Stewart on March 17, 2005, and reported pain in her spinal area.  Her physical exam was normal except for tenderness in her thoracic and lumbar spine.  Thoracic and lumbar spine x-rays were negative.  She was diagnosed with psoriatic arthritis and back pain.  (Tr. 662).

Dr. Dorion's treatment notes dated March 22, 2005 reflect that KF did not have a repeat CBC done, as instructed, and had discontinued her Azulfidine because "it was not giving her relief." He further noted that KF did not take Miacalcin because her mother stated that it did not help with her back pain, and that KF had discontinued physical therapy because it hurt her back.  Her physical exam was normal except for a psoriatic rash in her infraumbilical area, and moderate tenderness in her lower thoracic and lumbar spine, and the sacroiliac area bilaterally.  He reported that KF's peripheral joints were without swelling or tenderness, that she had a full range of motion, that her muscle strength was grossly normal, and that her gait was normal.  Dr. Dorion noted that KF's psoriatic rash had improved, but that she continued to

14

have some low back pain that only partially responds to treatment. (Tr. 627-628, 630-631).

Dr. Dorian's notes dated May 26, 2005 reflect that KF reported doing well except for lower back pain.  KF's May 13th MRI of her lumbar spine was normal.  KF's physical was normal except for a mild psoriatic rash in the infraumbilical area and mild lumbovertebral pain on deep palpation.  Dr. Dorian stated that KF's joints did not have any swelling or tenderness, and that she had a full range of motion.  Her muscle strength was grossly normal. (Tr. 625-626, 708-710).

Dr. Stewart's office notes dated May 26, 2005 reflect that KF reported she injured her arm when she slipped and fell.  Her wrist and hand were tender over the radius, with some swelling.  A wrist x-ray was negative.  (Tr. 660).  KF next presented to Dr. Stewart on August 22, 2005, and reported stomach and middle chest pain. Her physical exam was normal except for tenderness in her back and pain on palpation of breast bone.  She was diagnosed with chostochondritis and gastritis.  (Tr. 680).

KF was seen by Dr. Dorion on September 13, 2005.  KF continued to complain of pain in her lower back on a daily basis that impairs her activities.  On physical exam, Dr. Dorian observed an eczematoid rash in the infraumbilical area and tenderness on palpation of the lumbar spine.  He also noted that all other joints were without tenderness or swelling, and that KF had full range of

movement and grossly normal muscle strength.  (Tr. 702-703, 706-707).

KF returned to Dr. Stewart on September 20, 2005, complaining of a sore throat, headache, bilateral ear pain, chest pain, and fever the prior day.  She was diagnosed with sinusitis.  (Tr. 679). Office notes from Dr. Stewart dated October 20, 2005 reflect that KF complained of a headache off and on since August, when she got too hot in the sun during band practice.  Her physical exam was normal, and she was diagnosed with psoriatic arthritis, headache, and yeast vaginititis.  (Tr. 678).

KF was next seen by Dr. Stewart on December 1, 2005 for swelling in her right eye that was painful and made it difficult to see.  On physical exam, she had redness under her eye.  She was diagnosed with uveitis and prescribed steriod eye drops.  (Tr. 677).

Dr. Dorion's office notes from December 6, 2005 reflect that KF still complained of low back pain and occasional left knee pain. She also reported an episode of swelling on the right side of her face with some bruising near her right eye, for which she saw an ophthalmologist who prescribed eye drops.  She reported that the swelling resolved within 24 hours of using the drops.  KF's physical exam was normal except for mild tenderness on palpation of the lumbar vertebrae, the left greater trochanter of the femur, the left knee and the right shoulder.  Dr. Dorion also noted that KF

had no swollen joints, and had full range of motion.  He further noted that physical therapy had been prescribed in the past, but KF had not followed through; thus, he was prescribing physical therapy again. (Tr.  700-701, 697-699).

Dr. Dorion's office notes from February 7, 2006 reflect that KF continued to complain of low back pain and left knee pain.  She also reported right hip pain, and acute uveitis.  On physical exam, KF had a mild eczematoid rash in the infraumbilical area, mild tenderness over the right greater trochanter of the femur, pain at the right greater trochanter with internal rotation of the hip, mild swelling but no tenderness in bilateral knees, and moderate to marked tenderness in her lumbar vertebrae and sacroiliac joints. Her muscle strength was grossly normal and gait was normal.  Dr. Dorion referred her to Dr. Michael Redmond to evaluate her problem with uveitis, and once again recommended physical therapy.  (Tr. 695-696, 690-691).

KF was treated by orthopedist William E. Smith, M.D., on February 28, 2006, after reporting  a pop in her left knee while exiting a vehicle. An MRI showed edema in the subcutaneous tissue but collaterals were intact.  Dr. Smith diagnosed her with medial collateral strain in her left knee, with no indication of infectious process and no evidence of major instability.  (Tr. 684).  KF returned to Dr. Smith on March 15, 2006, and reported continued pain in her left knee.  Dr. Smith noted internal

derangement of her left knee, possible MCL, ACL meniscus. (Tr. 683).

Dr. Stewart completed a Juvenile Rheumatoid Arthritis form on March 27, 2006, in which she defers to KF's rheumatologist on almost all questions. (Tr. 686). Dr. Stewart also completed a Clinical Assessment of Pain, wherein she opined that KF has psoriatic JRA, that she has pain that is present but does not prevent functioning in everyday activities or work, that physical activity results in some increase in pain, but not to such an extent as to prevent adequate functioning in such tasks, and that her limitations may be present but not to a degree as to cause serious problems at work. She further opined that there are not restrictions on KF's daily activities. (Tr. 687-688).

**A.   Whether the ALJ erred in determining that KF's JRA does not meet, equal or functionally equal a listing.**

Plaintiff argues that the ALJ erred in finding that KF's arthritis does not meet, equal or functionally equal Listing 114.09, in failing to reference a specific Listing, and in not providing an adequate rationale for his findings. (Doc. 16 at 16-19). Defendant responds that Plaintiff has failed to provide documentation that KF's medical condition meets or equals the specific criteria of the Listings. Defendant also asserts that the ALJ's finding that KF does not meet or equal Listing 114.09 is implied, and that the ALJ was not required to mechanically recite

the evidence leading to his determination.

The Eleventh Circuit has explained the purpose and application of the Listing of Impairments, as follows:

> The Listings include medical criteria for specified disorders of thirteen major body systems. These impairments are so severe that an individual who has a listed impairment is generally considered unable to work based upon medical considerations alone. 20 C.F.R. § 416.925(a). A claimant may prove that he is disabled by either (1) meeting the Listings or (2) equaling the Listings. In order to meet a Listing, the claimant must (1) have a diagnosed condition that is included in the Listing and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable Listing and the duration requirement. A diagnosis alone is insufficient. 20 C.F.R. §416.925( c)-(d). In order to equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings.

Wilkinson on behalf of Wilkinson v. Bowen, 847 F. 2d 660, 663 (11th Cir. 1987). See also Bell v. Bowen, 796 F. 2d 1350, 1353 (11th Cir. 1986) (finding that "when a claimant contends that he has an impairment meeting the listed impairments . . . he must present specific medical findings that meet the various tests listed under the description of the applicable impairment[]"); Carnes v. Sullivan, 936 F. 2d 1215, 1218 (11th Cir. 1991) (providing that a "diagnosis of a listed impairment is not alone sufficient[,] the record must contain corroborative medical evidence supported by clinical and laboratory findings[]"). Moreover, the United States Supreme Court has found:

> Each impairment [in the Listings] is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment

> matches a listing, it must meet <u>all</u> of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

<u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990) (emphasis in original).

In order to prove equivalency to a listed impairment, a plaintiff must provide objective medical findings that support each of the criteria for the impairment under which he claims equivalency. <u>Bell</u>, 796 F.2d at 1353 (providing that "if in the alternative [claimant] contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such equivalency[]"). A claimant must show that the impairments produce functional limitations or restrictions equivalent to those required under the particular listing. Objective tests must be present to support a finding of equivalence. 20 C.F.R. § 416.926(a). <u>See also</u> <u>Sullivan v. Zebley</u>, 493 U.S. 521 (1990). Also, the medical findings must be at least equal in severity and duration to the listed findings. <u>Wilkinson</u>, 847 F. 2d 662. Plaintiff has the burden of producing medical evidence that establishes all of the required medical findings. <u>See</u>, <u>e.g.</u>, <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 & n.5 (1987). <u>See also</u> 20 C.F.R. § 416.926 (determining medical equivalence for adults and children); 20 C.F.R. § 416.926a (determining functional equivalence for children).

Contrary to Plaintiff's assertion that the ALJ erred in failing to specifically state which listing he considered, the ALJ's finding

that Plaintiff's impairment did not meet a particular listing can be implied.  Keane v. Commissioner of Social Security, 205 Fed. Appx. 748 (11th Cir. October 25, 2006);  Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986)("While the ALJ did not explicitly state that the appellant's impairments were not contained in the listings, such a determination was implicit in the ALJ's decision...While Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to [his] determination.  There may be an implied finding that a claimant does not meet a listing.");  Edwards v. Heckler, 736 F. 2d 625, 629-630) (11th Cir. 1984) (finding that a determination that plaintiff did not have a severe impairment under 20 CFR 404.1520(c) implies that he did not meet Listing 12.05(c), even though the ALJ did not specifically state such.);  See also Ellington v. Astrue, 2008 U.S.Dist. LEXIS 32254 (M.D. Ala, April 18, 2008) (Where the ALJ did not reference  any particular listings, and failed to offer any explanation for his determination that the claimant's impairments did not meet or medically equal a listing, decision had to be reversed.)

Based upon a review of the record, the undersigned finds that the ALJ implicitly found that KF's impairment does not meet or equal listing 114.09.  In his decision, the ALJ concluded that KF has the severe impairment of JRA; however, her impairment does not meet or equal the listing, and that her impairment does not result in at

least two marked areas of functioning or one extreme area of functioning as required by the regulations.  Section 114.09 of the Listings, "Inflammatory arthritis" requires a showing of at least one of the following:

1.   A history of joint pain, swelling and tenderness, and signs of joint inflammation or deformity in two or more major joints that result in an inability to ambulate effectively or to perform fine and gross movements effectively; or

2.   Ankylosing spondylitis or other spondyloarthropathy; or

3.   Growth impairment, musculoskeletal involvement, muscular involvement, ocular involvement, respiratory involvement, cardiovascular involvement, digestive involvement, renal involvement, hematologic involvement, skin involvement, endocrine involvement, neurological involvement, or mental involvement; or

4.   Inflammatory arthritis with signs of peripheral joint inflammation and significant constitutional symptoms and signs and involvement of two or more organs/body systems, at least one to a moderate degree; or

5.   Inflammatory spondylitis or other inflammatory spondyloarthropathies.

20 C.F.R. Pt. 404, subpt. P., App. 1 §§ 114.09.  A review of the medical evidence during the period of consideration shows that KF's JRA did not meet or equal this listing.

While KF has experienced joint pain and tenderness, there is no indication that they resulted in an inability to ambulate effectively or to perform fine and gross movements effectively.  In fact, the entries in the medical records repeatedly provide that

upon examination, KF had a full range of motion and normal ambulation and gait. (Tr. 340, 341A, 599, 601, 625-626, 635, 637-638, 666, 667, 691, 695-696, 698, 700-701, 702-703, 706-707, 709). Likewise, the medical records are devoid of any evidence that KF was diagnosed with ankylosing spondylitis or other spondyloarthropathy, or inflammatory spondylitis or other inflammatory spondyloarthropathies, or that her JRA resulted in a growth impairment or musculoskeletal, muscular, ocular, respiratory, cardiovascular, digestive, renal, hematologic, skin, endocrine, neurologic, or mental involvement[10]. Nor is there any evidence that KF experienced any significant "constitutional symptoms and signs" or the involvement of two or more organs/body systems, at least one of which to a moderate degree. Accordingly, Plaintiff failed to establish that KF meets listing 114.09.

She also failed to establish that KF 's impairment functionally meets listing 114.09. In determining that KF's JRA does not functionally meet listing 114.09, the ALJ stated the following:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but would not support a finding of functionally equal a listing.

> The record does document extensive treatment for juvenile

---

[10]While the medical record does reflect chronic rashes that are a part of KF's condition, that skin condition is not referenced in the "Catagory of Impairments, Skin Disorders" in Listing 8.01, referenced in Listing 114.09C.

rheumatoid arthritis (Juvenile RA), however, notes from rheumatologist Dr. Dorion consistently describe the claimant as doing well on her medication regimen with only low back pain. The back pain was thought to be due to the use of Prednisone, as an MRI of the back was normal. Therefore, the Prednisone was discontinued. Physical therapy for her back was also prescribed. However, the claimant never attended. Exams consistently report all joints as having a full range of motion without swelling and tenderness. Muscle strength is also described as grossly normal. In February of 2006, back pain persisted and medications were altered . . . .

In February of 2006, Dr. Smith evaluated the claimant's knee and indicated that the claimant's knee pain was a result of a recent injury and not due to any juvenile RA flare. X-rays revealed an internal derangement of the left knee with a possible tear. The claimant was to remain in physical therapy and undergo an MRI. However, no additional treatment is in record. . . .

The claimant's pediatrician Dr. Stewart also manages the claimant's juvenile RA and medication side effects, mainly nausea and gastro-intestinal problems, as well as other general health issues. All problems have been short-term and amenable to medications. Dr. Stewart also completed a Juvenile RA form and noted that the claimant's pain, while present, does not prevent functioning in everyday activities. While physical activity would increase pain some, Dr. Stewart indicated it would not be to an extent that would prevent adequate functioning. Finally, Dr. Stewart noted that no physical restrictions/limitations had been placed on the claimant's daily activities. . . .

[T]he claimant does not have an impairment or combination of impairments that results in either "marked" limitation in two domains of functioning or "extreme" limitation in one domain of functioning. In making the above findings, the undersigned agrees with DDS assessment at Exhibit B-14F. The DDS assessment is entirely consistent with the medical record, which overall, shows adequate control of the claimant's juvenile rheumatoid arthritis.

(Tr. 20-21, 26).

In determining whether a child's impairment functionally equals a listing, the regulations require consideration of "six domains," which are "broad areas of functioning intended to capture all of what a child can and cannot do." 20 C.F.R. § 416.926a(b)(1). These six domains are acquiring and using information, attending and completing tasks, interacting and relating to others, moving about and manipulating objects, self-care, and health and physical well being. (<u>Id</u>. § 416.926a(b)(1) (I)-(vi)). To satisfy the "functional equivalent" standard, a child claimant must have "marked" limitations in two domains or an "extreme" limitation in one domain. (<u>Id</u>. § 416.926a(d)). A "marked" limitation is defined as a limitation that "interferes seriously with [the] ability to independently initiate, sustain or complete activities", and is "more than moderate". (<u>Id</u>. § 416.926a(e)(2)(I)). An "extreme" limitation is reserved for the "worst limitations" and is defined as a limitation that "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities," but "does not necessarily mean a total lack or loss of ability to function." (<u>Id</u>. § 416.926a(e)(3)(I)).

As noted supra, the ALJ concluded that KF does not have an impairment or combination of impairments that results in at least two marked areas of functioning or one extreme area of functioning.

In reaching this conclusion, contrary to the arguments of Plaintiff, the ALJ summarized relevant medical evidence in the record that supported his determination. In finding that KF has a less than marked limitation on her ability to move about and manipulate objects, the ALJ noted that despite her medication, KF still experiences some pain which affects her ability to walk long distances. (Tr. 24) With respect to the domain of health and physical well being, the ALJ determined that KF has a less than marked limitation in this domain as she is required to take multiple medications to control her JRA. (Tr. 26). Taking into account the medical evidence, including the opinion of KF's treating pediatrician that KF's pain does not prevent her from engaging in everyday activities, and does not result in any physical restrictions or limitations on KF's daily activities, the ALJ determined that KF has no limitations on her ability to acquire and use information, attend and complete tasks, interact and relate with others or care for herself.

Based on the totality of the evidence that was before the ALJ, the undersigned finds that the ALJ did not err in concluding that KF does not meet or equal a listing, and does have marked limitations in at least two domains, or an extreme limitation in one domain such that she functionally meets a listing.

**B. Whether the ALJ erred in failing to articulate a credibility finding.**

Plaintiff argues that the ALJ failed to articulate a credibility finding, and that KF's testimony must therefore be accepted as true as a matter of law. Defendant argues that the ALJ noted KF's testimony regarding pain, and also found that her impairment could reasonably be expected to produce her alleged symptoms. However, KF's testimony regarding her pain was not conclusive evidence of disability as the ALJ had to consider the entire record.

Addressing Plaintiff's alleged symptoms, the ALJ stated as follows:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but would not support a finding of functionally equaling a listing.

(Tr. 20).

As set forth fully above, the ALJ correctly determined that KF's JRA does not meet, equal, or functionally equal Listing 114.09. The ALJ held that KF's allegations of symptoms, including pain, are credible; however, the ALJ also found, relying in part on the opinion of KF's treating physician, that while KF's pain is present, it is not so limiting that it impairs her ability to engage in everyday activities. The ALJ's finding is supported by substantial evidence.

## V.   Conclusion

For the reasons set forth, and upon careful consideration of

the administrative record, the oral argument, and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income for her minor child, be **AFFIRMED.**

 **DONE** this **14th** day of **May, 2009.**

                              _____/s/SONJA F. BIVINS_____
                              **UNITED STATES MAGISTRATE JUDGE**